UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------x

EMANUELE D'IPPOLITO,

        Plaintiff,

-against-

AUTO EXPO ENT INC.
and GREAT NECK SUZUKI,

        Defendants,

----------------------------------------x

Index No.

**COMPLAINT**

CV 13 - 5650

GERSHON, J.

GO, M.J.

FILED
CLERK
2013 OCT 15 AM 10: 59
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

As and for his complaint, in the above-captioned action, plaintiff EMANUELE D'IPPOLITO ("Plaintiff"), by and through his attorneys Kasell Law Firm, alleges as follows:

## PARTIES

1. At all times mentioned herein Plaintiff was and is an individual residing in Cliffside Park, New Jersey and who maintains an office located in New York, New York.

2. Upon information and belief, at all times herein mentioned, Defendant Auto Expo Ent Inc. was and is a New York Corporation with its principal place of business in the County of Queens at 46 Northern Boulevard, Great Neck NY 11021.

3. Upon information and belief, at all times herein mentioned, defendant Great Neck Suzuki was and is a New York Corporation with its principal place of business in the County of Queens at 46 Northern Boulevard, Great Neck NY 11021.

4. Auto Expo Ent Inc. and Great Neck Suzuki (collectively "Defendants") are engaged in the business of selling and servicing new and used motor vehicles. Defendants are also engaged in the financing and rranging of financing of motor vehicles that it sells to the public.

## JURISDICTION AND VENUE

5. Jurisdiction is premised on 15 U. S. C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

6. Plaintiff instituted this action or actual damages, statutory damages, attorneys' fees and costs against Defendants for multiple violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* (hereinafter "TILA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 1026, promulgated pursuant thereto, and for related and unrelated violations of New York General Business Law § 349.

7. Venue in this District is proper in that the conduct complained of occurred here.

## STATUTORY FRAMEWORK
## TILA

8. The Truth in Lending Act ("TILA") is a federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending agreement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended, 15 USC §§ 1601 *et seq*. The regulations implementing the statute, which are known as an as "Regulation Z" are codified at 12 C.F.R. § 1026. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

9. The retail installment sales contract ("RISC") is the document that a consumer is supposed to receive in which the requisite TILA disclosures are to be made.

## BACKGROUND

10. Plaintiff was looking to purchase a used automobile and searched on-line for a vehicle. Plaintiff visited EBAY, completed forms on-line and was notified that he had been pre-approved for financing.

11. Plaintiff found the vehicle that he was interested in--
a used 2009 Mercedes Benz GL550 (the "Vehicle") that was being offered for sale by Great Neck Suzuki.

12. Plaintiff visited Great Neck Suzuki on May 2, 2013 to work out the details of his purchase.

13. Plaintiff returned to Defendants' place of business on May 9, 2013 to continue the purchasing process.

14. On or about May 17, 2013, Plaintiff went to Defendants' place of business to complete the financing and purchase of the Vehicle.

15. Plaintiff and Defendants agreed upon a final purchase price of $42,392.46 including tax, license, and title.

16. Plaintiff agreed to trade in his Volkswagen Touareg and Defendants agreed to pay off the loan for Plaintiff's Touareg and to give plaintiff a $12,000 credit for his trade-in.

17. Plaintiff also agreed to a cash down payment of $3,000.

18. Plaintiff agreed to finance the balance of his purchase.

19. Defendants accepted Plaintiff's trade-in of the Touareg.

20. On May 17, 2013, Defendants contracted with Plaintiff to finance Plaintiff's purchase of the Vehicle as follows:

   a. Total cash price of $42,392.46;
   b. Annual Percentage Rate ("APR") of 10.55%;
   c. Amount Financed of $35,899.89;
   d. Total sale price of $55,90.33 (including down payment of $5,784.57);
   e. Total payments of $48,505.76.

   A copy of the Retail /installment Sales Contract ("RISC") with the terms of Plaintiff's financing agreement for the Vehicle's purchase is attached as Exhibit "A".

21. The RISC lists Auto Expo Ent Inc as "Creditor – Seller." See Exhibit "A".

22. Defendants put license plate GEB-8360 on the Vehicle.

23. Defendants issued to Plaintiff a temporary registration and stated that the title and permanent registration would be mailed to him shortly.

24. Notably, in violation of TILA, Defendants did not provide a copy of the RISC to Plaintiff on May 17, 2013. Instead, a copy was later e-mailed to Plaintiff's counsel in July of 2013.

25. Plaintiff drove home with his Vehicle, thinking his business with the Defendants was concluded except for a few minor items like a spare key and new floor mats that the Defendants promised to take care of.

26. Apparently, Defendants intended to assign Plaintiff's loan to a bank or finance company but were unable to find a purchaser for the loan because a few weeks later, in the first week of June 2013, Defendants began calling and e-mailing Plaintiff to tell him that he would need to come back and execute new paperwork.

27. But defendants knew full well that a valid and binding sale had already taken place. For one thing, they already had Plaintiff's executed RISC. Additionally,

DMV regulation 78.20 (c) states that "[u]nder no circumstances may dealers issue temporary certificates:

...(4) if a bona fide sale has not been made." Thus, by issuing Plaintiff a temporary registration for the Vehicle, Defendants certified that a sale had taken place.

28. Furthermore, Defendants completed an MV-50 dated May 17, 2013, explicitly certifying "that the vehicle described above was sold to the purchaser on the date indicated." A copy of the MV-50 is attached as Exhibit "B".

29. And Defendants put license plate GEB-8360 on the Vehicle.

30. Moreover, by the MV-50 Defendants certified that "[a]t the time of delivery the purchaser was entitled to register the vehicle". See Exhibit B.

31. The representation that at the time of delivery Plaintiff was entitled to register the Vehicle was false and Defendants never provided title to Plaintiff so that he could register the Vehicle.

32. Nevertheless, before Plaintiff was even due to make his first payment, Defendants demanded new loan terms from Plaintiff that would require Plaintiff to make an additional down payment after the RISC had been finalized.

33. The deal that Defendants attempted to force Plaintiff to agree to after Plaintiff executed the RISC:

    a. Increased his total down payment by $7,900—from $3,000 to $10,900;
    b. Increased the APR from 10.55% to 20.5%; and
    c. Increased the total sale price from $55,390.33 to $63,599.60

34. Defendants confirmed the new terms that they were insisting on in a written document that they prepared. A copy of the page prepared by Defendants

showing the "Deal from original loan" and the "New deal structure" is attached as Exhibit "C".

35. Not surprisingly, Plaintiff refused to agree to the new terms that Defendants were insisting on.

36. Defendants' sudden change in the material terms of the financing for the Vehicle resulted in the disclosures in the RISC executed by the parties being inaccurate.

37. Defendants violated TILA by improperly increasing the down payment that it required from Plaintiff.

38. Defendants violated TILA by improperly increasing the APR that it would charge Plaintiff.

39. Defendants violated TILA by improperly inflating the total sale price of the Vehicle.

40. Defendants violated TILA by not giving the RISC to Plaintiff at the time of the transaction.

41. Even if Plaintiff wanted to unwind the deal—which he does not—he could not unwind the deal because Defendants have already sold the Touareg that he traded in to them so they cannot return him to the *status quo ante.*

42. Despite the certification in the MV-50, Defendants never applied for a permanent registration for the Vehicle and also failed or refused to deliver title to the Vehicle. Now, the temporary registration that Defendants caused to be issued to Plaintiff has expired and Plaintiff cannot legally operate the Vehicle on public roads.

## COUNT I
## MULTIPLE VIOLATIONS OF THE TRUTH IN LENDING ACT

43. Plaintiff repeats the allegations set forth in paragraphs 1-42 as if fully set forth at length herein.

44. At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and are the persons to whom the transaction which is the subject of this action is initially payable, making Defendants creditors within the meaning of TILA, 15 U.S.C. § 1602 (f) and Regulation Z § 1026.2(a)(17).

45. Plaintiff and Defendants entered into a consumer credit transaction that was memorialized in an agreement covered by the TILA, to wit the RISC annexed as Exhibit "A".

46. Under the transaction, Defendants failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the amount financed in violation of Regulation Z § 1026.18(b) and 15 U.S.C. § 1638(a)(2)(A).

47. Defendants violated TILA by failing to give Plaintiff a copy of the RISC so that je could compare the terms of credit being offered.

48. Defendants also failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the annual percentage rate in violation of Regulation Z § 1026.18(e) and 15 U.S.C. § 1638(a)(2)(B).

49. Defendants further failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the total of payments in violation of Regulation Z § 1026.18(h) and 15 U.S.C. § 1638(a)(2)(B)(6).

50. Similarly, Defendants failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the total sale price in violation of Regulation Z § 1026.18(j) and 15 U.S.C. § 1638(a)(2)(B)(5).

51. Defendants also violated TILA by failing to deliver the required disclosures at the time of Plaintiff's purchase.

52. Accordingly Defendants have violated TILA by providing inaccurate disclosures in the RISC as to the amount financed, the annual percentage rate, total of payments, and total sale price.

53. Plaintiff relied on these inaccurate disclosures to his detriment.

54. Plaintiff is therefore entitled to actual damages, statutory damages and punitive damages in an amount not to exceed $500,000.

Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## COUNT II
## VIOLATION OF GENERAL BUSINESS LAW § 349

55. Plaintiff repeats the allegations set forth in paragraphs 1-54 as if fully set forth at length herein.

56. New York General Business Law § 349 prohibits the use of deceptive or unfair practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

57. The conduct alleged herein, and the sale and financing of vehicles is consumer oriented conduct as it has the demonstrated potential to be repeated with other consumers.

58. Defendants engaged in deceptive acts and practices that damaged Plaintiff by putting license plates on his Vehicle but not obtaining a permanent registration for the Vehicle so that he cannot drive the Vehicle.

59. Defendants engaged in deceptive acts and practices by telling Plaintiff he had been approved for the loan under the terms contained in the RISC and then demanding he execute a different agreement on much less favorable terms.

60. Defendants' actions and practices were misleading in a material respect and Plaintiff has been damaged as a result.

61. Plaintiff hereby demands that all attorneys' fees, costs, and other fees of this action be borne by Defendants and that the Court award Plaintiff's actual damages, as well as punitive damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT

62. Plaintiff repeats the allegations set forth in paragraphs 1-61 as if fully set forth at length herein.

63. Plaintiff and Defendants contracted for the purchase of the Vehicle, including the financing detailed in the RISC.

64. Defendants have not provided title to the Vehicle and have not applied for Plaintiff's registration of the Vehicle despite the certification contained in the MV-50.

65. Before Plaintiff's first payment was even due, Defendants demanded that Plaintiff

return to Defendants' place of business to execute a new financing agreement on terms that were much less favorable to Plaintiff, breaching the contract.

66. Defendants only provided a temporary registration for the Vehicle and never provided a permanent registration for the Vehicle in breach of the contract between Plaintiff and Defendants.

67. The temporary registration has expired and Plaintiff can no longer legally operate the Vehicle on public roads.

68. Defendants disavowed the RISC that Plaintiff executed, breaching that contract.

69. Defendants demanded that Plaintiff make additional down-payments; assume a dramatically higher interest rate; and pay an altogether higher mount for the Vehicle—all in breach of the contract between Plaintiff and Defendants.

70. Plaintiff has suffered damages as a result of Defendants' breaches in an amount to be determined at trial.

WHEREFORE, Plaintiff EMANUELE D'IPPOLITO, prays for judgment against Defendants for violations of the Truth in Lending Act, violations of New York General Business Law § 349, breach of contract, incidental and consequential damages, punitive damages, and attorneys fees as follows:

A. A loan for the Vehicle under the terms agreed to in the RISC;

B. Title to the Vehicle in Plaintiff's name;

C. All incidental and consequential damages incurred by Plaintiff including those for his not having use of his Touareg or the Vehicle;

D. All reasonable attorneys' fees, witness fees, and all court costs and other fees

incurred by the Plaintiff;

E. An award of punitive damages against Defendants by virtue of their fraudulent

conduct; and

F. Such other and further relief that the Court deems just and proper.

DATED: Long Island City, New York
October 10, 2013

/s/
David M. Kasell, Esq. (DK-7753)
Kasell Law Firm
Attorneys for Plaintiff
1038 Jackson venue, #4
Long Island City, NY 11101
(718) 404-6668

Exhibit A

Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | Creditor - Seller (Name and Address)
---|---
EMANUELE DIPPOLITO<br>402 ONCREST TERRACE<br>CLIFFSIDE PARK, NJ 07010 | AUTO EXPO ENT INC<br>46 Northern Blvd<br>Great Neck, NY 11021

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2009 | ME/BE GL550 | 4JGBF86E39A618549 | ☒ personal, family or household<br>☐ business<br>☐ agricultural  ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $6,784.57 |
|---|---|---|---|---|
| 10.55 % | $12,705.87 | $35,899.89 | $48,605.76 | $55,390.33 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 675.08 | Monthly beginning 06/16/13 |

Or As Follows:

Late Charge. If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __1.00__ or __5__ % of the part of the payment that is late, whichever is __greater__.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

ITEMIZATION OF AMOUNT FINANCED

Cash Price (Including $ 2,477.46 sales tax)  $42,392.46 (1)

Total Downpayment =
Trade-in 2006 VOLKSWAGEN TOUAREG
(Year) (Make) (Model)

| Gross Trade-In Allowance | $12,000.00 |
| Less Pay Off Made By Seller | $ 8,215.43 |
| Equals Net Trade In | $ 3,784.57 |
| + Cash | $ 3,000.00 |
| + Other _____ | $ N/A |

(If total downpayment is negative, enter "0" and see 4I below)  $ 6,784.57 (2)

Unpaid Balance of Cash Price (1 minus 2)  $35,607.89 (3)

Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of those amounts):

A  Cost of Optional Credit Insurance
    Paid to Insurance Company or Companies.
    Life            $ N/A
    Disability      $ N/A         $ N/A
B  Vendor's Single Interest Insurance
    Paid to Insurance Company       $ N/A
C  Other Insurance Paid to the Insurance Company  $ N/A
D  Fees Paid to Government Agencies
    to N/A     for N/A       $ N/A
    to N/A     for N/A       $ N/A
    to N/A     for N/A       $ N/A
E  Government Taxes Not Included In Cash Price  $ N/A
F  Government License and/or Registration Fees
    REG

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your decision to buy or not buy any other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
Credit Life $ ____N/A____
Credit Disability $ ____N/A____
Insurance Company Name ____N/A____
Home Office Address ____N/A____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Insurance**
☐ _____
     Type of Insurance          Term
Premium $ ____N/A____
Insurance Company Name ____N/A____
Home Office Address ____N/A____

I want the insurance checked above.

X _____
Buyer Signature          Date

X _____

| | | | |
|---|---|---|---|
| | Paid to Insurance Company | $ | N/A |
| C | Other Insurance Paid to the Insurance Company | $ | N/A |
| D | Fees Paid to Government Agencies | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| E | Government Taxes Not Included in Cash Price | $ | N/A |
| F | Government License and/or Registration Fees | $ | N/A |
| | REG | | |
| G | Government Certificate of Title Fees | $ | 217.00 |
| H | Government Waste Tire Management Fee | $ | N/A |
| I | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to for Prior Credit or Lease Balance | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to AUTO EXPO E for PROCESSING FEE | $ | 75.00 |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 292.00 (4) |
| 5 | Amount Financed (3 + 4) | $ | 35,899.89 (5) |

Home Office Address _____ N/A _____

I want the insurance checked above.

X _____
Buyer Signature    Date

X _____
Co-Buyer Signature    Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI Insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ __N/A__ and is also shown in item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract.

Returned Check Charge: You agree to pay a charge of $ 20 if any check you give us is dishonored.

OPTION: ☐ You pay no finance charge if the amount financed, item 5, is paid in full on or before _____N/A_____, Year N/A. SELLERS INITIALS __N/A__

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of the agreement. 3. Under the law, you have a right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
RETAIL INSTALMENT CONTRACT
Buyer Signs X _____ Date 05/17/13    Co-Buyer Signs X _____ Date 05/17/13
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Address _____
Seller signs Auto Expo St Inc    Date 05/17/13    By X _____    Title MGR

Seller assigns its interest in this contract to __Americredit Financial Services__ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☒ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse
Seller AUTO EXPO ENT INC    By _____    Title MGR

LAW FORM NO. 553-NY (Rev. 4/09) U.S. Patent No. D465,762

ORIGINAL LIENHOLDER

Exhibit B

**New York State Department of Motor Vehicles**

# RETAIL CERTIFICATE OF SALE

**No. 44501972**

*44501972*

**TYPE OF SALE**
☐ WHOLESALE OR ☐ RETAIL
☐ New ☐ Used ☐ Demo ☐ Salvage

**VEHICLE INFORMATION:**

| Year | Make | Model | Body Type | Color | Weight (Unladen) | Fuel Type | Cylinders | Adult Seating Capacity |
|---|---|---|---|---|---|---|---|---|
| 2009 | ME/BE | GL550 | SUBN | BLACK | 5388 | G | 8 | 5 |

| Vehicle Identification Number | Lien(s) | Inspection Certificate Number | Date of Inspection | Inspection Station Number |
|---|---|---|---|---|
| 4JGBF86E39A185459 | L1 | 04838304 | 7107716 | 05/17/13 |

| Plate/Permit Number | Number of Dealer Plate Loaned | Lease Buyout (Insp. Not Required) | Selling Price |
|---|---|---|---|
| GEB8360 | N/A | ☐ | $ 39,915.00 |

**DEALER INFORMATION** (Print Name and Address)
AUTO EXPO ENT INC
46 Northern Blvd Great Neck, NY 11021

**PURCHASER INFORMATION** (Print Name and Address)
EMANUELE DIPPOLITO
1230 AVENUE OF AMERICAS NEW YORK, NY 10020

Date of Sale: 05/17/13

**PRIOR OWNER INFORMATION** (Print Name and Address Source of Ownership)
ELEGANT MOTORS
500 OLD COUNTRY RD WESTBURY NY 11590

Date of Purchase: 05/14/13

## ODOMETER DISCLOSURE STATEMENT

Federal and state laws require that you state the mileage of the vehicle described on this certificate, when transferring ownership. Failure to do so, or not telling the truth about the mileage may result in fines and/or imprisonment.

The odometer on the vehicle described above has: ☐ 5 digits  ☒ 6 digits, not including tenths

☒ I certify that, to the best of my knowledge, this odometer reading reflects the "ACTUAL MILEAGE" of the vehicle described above.

☐ I certify that, to the best of my knowledge, this odometer reading "EXCEEDS MECHANICAL LIMITS."

☐ I certify that, to the best of my knowledge, this odometer reading is "NOT THE ACTUAL MILEAGE. WARNING: ODOMETER DISCREPANCY."

**ODOMETER READING:** 6 1 1 8 9 (no tenths)

**DEALER CERTIFICATION:**
I certify: The vehicle described above was sold to the purchaser on the date indicated. At the time of delivery the purchaser was entitled to register the vehicle. This vehicle complied with equipment requirements of the Commissioner's Regulations. At the time of delivery, such equipment was in condition and repair to render satisfactory and adequate service on the public highway under normal use. Equipment certification does not apply to a vehicle sold as new, wholesale, or salvage. All New York State and local taxes due as a result of this sale have been collected from the purchaser. False statements made herein are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law.

| DEALER (or authorized representative) - (SIGN full name) | PRINT full name of dealer or authorized rep. | Date | Dealer Facility No. |
|---|---|---|---|
| [signature] | BEBI LEDGISTER | 05/17/13 | 7087036 |

| PURCHASER - (SIGN full name) | PRINT full name of purchaser | Date | Selling Dealer NYS Sales Tax No. |
|---|---|---|---|
| [signature] | EMANUELE DIPPOLITO | 05/17/13 | 11-3530626 |

**ANY CHANGE OR ALTERATION VOIDS THIS CERTIFICATE**

MV-50 (03/04)

Exhibit C

